In 1870, lands, including those described in the bill, were conveyed to Stephen Morgan —
"In trust for the following and no other uses and purposes, viz., on a written request of the same to be made within two years two years, signed William H. Bumstedt, William Keeney, Charles Schultz and William Batty, or any three of them or the survivors to convey in fee-simple by proper deeds for that purpose either or both of the above-described piece or parcel of land and premises as may be designated in said request to the party or parties and for the price or prices mentioned in said request, and to apply the net proceeds arising from such sale or sales — firstly towards the payment any of certain promissory notes which in pursuance of a compromise entered into on the twenty-eighth day of December, in the year eighteen hundred and sixty-nine, between the said William Van Keuren and William H. Batty and divers of their creditors, were drawn by the said William Van Keuren and William H. Batty in favor of the said creditors, payable in three, six and nine months respectively, and endorsed by the said William H. Bumstedt, William Keeney and Charles Schultz and William Batty or either of them, which may not be paid according to the terms of said compromise, and secondly to pay any balance there may be after all said notes are paid if arising from the sale of the piece or parcel of land and premises purchased by parties of the first part from Daniel Toffey and wife and George C. Toffey, being the premises hereinbefore first described, then the profits or excess of the net proceeds of the sale over the amount laid out and expended by the said parties of the first part in or upon said premises to said William H. Bumstedt, William Keeney and Charles Schultz, and any balance yet remaining together with any balance arising from the sale of three lots of land in Hudson City. Being the premises hereinbefore secondly described to said William H. Van Keuren and William H. Batty, and if said written request be not made within said two years or if said request be for the sale of one only of the two pieces or parcels of land and premises hereinbefore described, then to reconvey in fee-simple by proper deed or deeds for that purpose to said William Van Keuren and William H. Batty, their heirs and assigns, both of said pieces or parcels of land and premises or the one not mentioned in said request, as the case may be." *Page 554 
That conveyance was subject to a mortgage which was foreclosed in 1879, but to which the mayor and aldermen of Jersey City were not made a party. During the time that Morgan held the legal title, he filed in the appropriate office a map of the lands so held by him, upon which there were delineated a number of streets, one of which carried the name of Van Keuren avenue. By stipulations during the final hearing, the differences of the parties were reduced to the present dispute as to whether or not the avenue just mentioned is a public highway or the private property of the complainant. It is conceded that West Side avenue and Duffield avenue are subject to the public easement. By various mesne conveyances the lands so held in trust by Morgan have become the property of the complainant. They consisted of unimproved, unenclosed lands lying in Jersey City, near the easterly bank of the Hackensack river. Beginning in 1888, the complainant and its predecessors filled in the land and established avenues or ways over and across its lands for its use in carrying on its business which consists of lumber and the manufacture of wooden packing cases. Among the ways so laid out was one running from the extreme northerly end of a street named West Side avenue westerly to the northern end of another street called Duffield avenue, which is the most westerly street in this part of Jersey City, and the one immediately east of the said river.
Upon acquiring title to these lands the complainant's predecessor paid to the municipal authorities of Jersey City the sum of $381 for the establishment of a water system for fire-fighting purposes. At or about the same time it caused a railroad siding to be laid over the strip of land, which will be referred to as Van Keuren avenue, for the purpose of convenience.
There was some attempt to dispute this first fact by the production of a witness from the water department of Jersey City, who testified that a search of the records thereof disclosed no charge for any such installation from 1901 to the present time. It cannot be seriously maintained that this disproves the claim of the complainant, because the defendant *Page 555 
municipality's representatives had known for a period of two weeks before this testimony was given that the charge was made against the complainant more than twelve years before the date at which the search was begun.
Some time after the establishment of the complainant's business at the place referred to, it sold and conveyed a portion of its lands abutting on the easterly bank of the Hackensack river to the Public Service Electric and Gas Company. This last-mentioned tract lay at the westerly end of Van Keuren avenue and included a small portion thereof. In or about the year 1920 the Public Service Electric and Gas Company petitioned the governing body of Jersey City to vacate so much of the westerly extremity of Van Keuren avenue as pierced its property, upon its offer to substitute a portion of its land which it agreed to dedicate so as to continue Van Keuren avenue from the point where the vacation was to begin, southerly and westerly around its property, to Duffield avenue. This vacation was made, and from that the defendants argue an acceptance of the Morgan dedication was accomplished.
Ten witnesses were produced by the Public Service Electric and Gas Company who testified to a use of Van Keuren avenue as a street over varying periods of time, running from two or three years to approximately twenty-four years. Nine of them are employes of that company, who testified, I think without exception that the only use of the street has been by such employes and others, such as trades people having business with the company or its employes in this territory. It should be said, however, that they testified to having seen pleasure or bus automobiles use the street at times when the adjoining, parallel public streets were impassable by reason of floods caused by torrential rains. It was also made to appear that members of the Jersey City police department occasionally were seen to traverse it.
The complainant argues that there was no efficient dedication of the streets delineated on the Morgan map. It will be recalled that the deed of trust to Morgan required him to hold the lands, and, upon a written request of any three of the *Page 556 
beneficiaries or the survivors, to convey the same, as might be directed in such request, and to distribute the proceeds of such sale as therein directed. It seems to me that it was not within the authority of Morgan to dedicate any portion of the real estate held in trust or to dispose of it in any other wise except in accordance with the provisions of the deed. I do not conceive that Prudden v. Lindsley, 29 N.J. Eq. 615, is any authority for the position taken by the defendants. There, trustees of a school district dedicated a strip of land held in trust for the purpose of establishing a road over one side of the track. The court of errors and appeals decided that inasmuch as the trust was of a somewhat indefinite character a discretion was vested in the trustees and they held that the road was not inconsistent with the uses and purposes of the trust, but by implication this pronouncement is rather favorable to the complainant because in the case at bar there is nothing indefinite or ambiguous in the covenant, and any unauthorized dealing with the land was certainly inconsistent with the trust, where the effect was to give away a portion of the trust property.
The next point to be dealt with grows out of the attempt of the defendants to establish a public right of way by user for a period of twenty years and more. It is elementary that every use of a way will not establish a public right. The use by the public must be with the actual or implied knowledge of the landowner and it must be adversely under a claim or color of right, not merely by the owner's permission. It must be continuous and uninterrupted for the required period. 29 C.J. 373. It will have been observed that the use of the lands in question appears to have been exclusively by the employes of the defendant Public Service Electric and Gas Company and those having business relations with them. The only exceptions were occasional visits by municipal police officers and the two occasions when unusually heavy summer rainstorms flooded the adjoining parallel streets so that the traffic normally borne by them was diverted over it for temporary passage. The difficulty with the use of the land under consideration by the employes is that it does not appear to have *Page 557 
been adverse, but according to the testimony of some of the witnesses for the complainant, was acquiesced in by them as a neighborly accommodation.
It should be said that there was further testimony given by one or two of the witnesses for the defendants, to the effect that an occasional passenger automobile would be seen using the land in dispute (in some instances where the occupants had lost their way and wandered off the main avenues of transportation into and through the locus in question) as well as other runways which the complainant had established for transporting lumber to and from the various piles of lumber which it kept in stock. It is inconceivable that anyone could seriously consider such casual and sometimes unintended use sufficient to constitute a public user. Besides that, it is common knowledge that the use of the automobile as a means of transportation had hardly come into use at all twenty years ago. It was used almost exclusively for pleasure. In addition to that, no one who examined the exhibits in this case showing the surface of the ground would believe that any man in his right senses would have driven a motor vehicle over Van Keuren avenue before the days of snubbers, shock absorbers and semi-elliptical springs. Those accessories have all come into use within the last twenty years.
The remaining point to be considered is evidenced by a considerable number of deeds in the complainant's chain of title, wherein the descriptions of the lands conveyed make reference to the Morgan map. It certainly requires neither argument nor the citation of authorities to convince anyone that the sole owner of lands may dedicate them, or a portion or portions of them, to public use by filing a map illustrative thereof and conveying other lands shown upon the map by reference thereto. In fact, this elementary rule is conceded by complainant's counsel. But, as already pointed out, the ownership of Morgan at the time of the filing of the map in question and at the making of the conveyance by him, was highly qualified and consisted of holding the mere naked title without any beneficial interest or any powers other than those set out in the conveyance to him. It would be intolerable to *Page 558 
attempt to explain in detail why the innumerable citations do not appear to be germane. Of course, no one will undertake to dispute the soundness of the views expressed in cases such as Trustees
v. Hoboken, 33 N.J. Law 13, and Earle v. New Brunswick,38 N.J. Law 47. But I do not think that either of these cases is of the slightest aid, because the powers of the trustees were nothing at all like those confided to Morgan. For example, in theNew Brunswick Case just mentioned, executors whose testator had clothed them with a general power to sell lands caused a map to be filed delineating certain streets. It requires but slight knowledge of real estate marketing to realize that it is not only highly desirable, but necessary, to provide public, perpetual ways in order to sell off small parcels of land to a large number of purchasers. But in Morgan's case he was dealing with land that was little better than swamp, on an extreme outlying section of what is now Jersey City, which at that time was so desolate and isolated that, according to the witness O'Brien, it was used years later for trapping wild animals. Certainly the establishing of a system of ordinary city streets in lands such as these was of no value to the beneficiaries of the trust and, therefore, was not within the implied power of Morgan, as it was in the executors in the New Brunswick Case, or the school trustees inPrudden v. Lindsley, supra.
It is also "hornbook law," as Vice-Chancellor Garrison would say, that a grantee is bound by the provisions of his deed when he accepts delivery thereof and of all matters appearing in the recorded deeds which evidence his chain of title. The exhibits show that in several of the recorded deeds in the chain of title of the complainant's property descriptions were given by reference to the Morgan map. Complainant's counsel argues that in some of the deeds the map was only mentioned to identify certain parcels of land which were excepted from the grant, and that therefore these deeds are not evidence of estoppel. Whether or not that result follows, I do not know. But it is of no moment, in view of what is about to be said. It is undoubtedly true, however, that in at least four deeds this form of description was used to identify *Page 559 
the land intended to be granted in these deeds. The reason for the rule under consideration, I understand to grow out of the determination of this court that one shall not by his act make it probable that others, relying thereon, will change their positions for the worse, and then allow him to repudiate his act, to the disadvantage of the others. If I file a map showing broad streets and avenues, parks and spacious plazas and sell to others by reference thereto, certainly I will not be permitted to deprive such purchasers and their grantees of the benefits for which they will be presumed to have paid by subsequently disposing for private use of the lands so dedicated to public use for the benefit of all my vendees. But consider the application of the rule to the character of the neighborhood of the locus inquo. In addition to what has already been said it should be further pointed out that the complainant's land is comprehended upon the outskirts of Jersey City between the extreme northerly ends of two streets, West Side avenue and Duffield avenue. Nobody had any reason to traverse Van Keuren avenue except for the purpose of visiting the lands of the complainant at the time the complainant or its predecessors in business secured title. While I appreciate that a dedication once made is irrevocable, I have not only found that there was no dedication arising from the filing of the Morgan map, but, in addition, the complainant and its predecessors in title cannot be held to have ratified an attempted dedication when the examination of title must have disclosed the map and the deed to Morgan, from which the invalidity of Morgan's effort to dedicate would have been apparent. While the grantee, as I have already said, is bound by all valid and subsisting covenants, conditions, restrictions and other matters appearing in his chain of title, he certainly does not convert an invalid portion of an earlier deed into an enforceable one by his acceptance of a deed which does not contain an express ratification.
I have been earnestly entreated to consider the interest of the public in retaining all properly dedicated streets until the dedication is vacated in proper form. I have not lost sight of the gravity of allowing public property to be appropriated *Page 560 
to private use. It may be that in the future Van Keuren avenue, or land in its immediate vicinity, will be of great value as an artery of traffic. If that time comes, as counsel for the complainant says, there is plenary power in the defendant municipality to acquire the same and improve it as a street. On the other hand, it is no less momentous in the eyes of this court that private property shall not be taken for public use without just compensation, and for the reasons already given I consider this strip of land, which has been referred to for convenience sake as Van Keuren avenue, to be the private property of the complainant.
A decree should be entered in accordance with the prayer of the bill.